UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X

DAVID BLAU, Trustee of the Zupnick Family
Trust 2008 C,

                          Plaintiff,                         **MEMORANDUM & ORDER**

          -against-                                          **14-CV-3202 (NGG) (VMS)**

ALLIANZ LIFE INSURANCE COMPANY OF
NORTH AMERICA,

                          Defendant.
---------------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff David Blau ("Blau"), Trustee of the Zupnick Family Trust 2008 C (the "Trust"),

brings this action against Defendant Allianz Life Insurance Company of North America

("Allianz North America")[1] seeking declaratory relief concerning a life insurance policy issued

by Allianz North America of which the Trust is the owner and beneficiary. Allianz North

America has moved to dismiss the Complaint pursuant to Federal Rules of Civil

Procedure 12(b)(2), 12(b)(5), and 12(b)(6).[2] (Not. of Mot. (Dkt. 14).) For the reasons discussed

below, Allianz North America's motion to dismiss for lack of personal jurisdiction is DENIED;

---

[1] The court refers to Defendant as "Allianz North America" in order to distinguish it from non-party affiliate Allianz Life Insurance Company of New York. See infra Part I.A.2.

[2] In the alternative to its Rule 12(b)(6) motion to dismiss for failure to state a claim, Allianz North America requests that the court order Blau to provide a more definite statement pursuant to Rule 12(e). (See Allianz North America's Mem. of Law in Supp. of Mot. to Dismiss the Compl. (Dkt. 14-1) at 14 n.6.) Because the court grants the motion to dismiss for failure to state a claim, it does not address Allianz North America's alternative motion. See, e.g., Ostrolenk Faber LLP v. Unigene Labs., Inc., No. 12-CV-3991 (HB), 2012 WL 3114742, at *3 n.2 (S.D.N.Y. Aug. 1, 2012). Moreover, a motion for a more definite statement under Rule 12(e) "is appropriate in narrow circumstances, namely, where a pleading is sufficiently intelligible for the district court to make out one or more potentially viable legal theories on which the claimant might proceed—thus precluding dismissal under Rule 12(b)(6)—but where the pleading is so vague or ambiguous that the opposing party cannot respond to it . . . with a pleading that can be interposed in good faith or without prejudice to himself." Bldg. Serv. 32BJ Health Fund v. Team Clean, Inc., No. 14-CV-9683 (JPO), 2015 WL 3953638, at *1 (S.D.N.Y. June 29, 2015) (internal quotations marks and citations omitted). "Rule 12(e) is designed to remedy unintelligible pleadings, not to correct for lack of detail," which, as discussed below, is the core issue here. Id. (internal quotations marks and citation omitted).

1

Allianz North America's motion to dismiss for improper service is DENIED; and Allianz North America's motion to dismiss for failure to state a claim is GRANTED WITHOUT PREJUDICE.

## I.   BACKGROUND

### A.   Factual Background

#### 1.   Facts Alleged in the Complaint

The following facts are alleged in the Complaint, and are taken as true except where otherwise noted.

##### a.   *The Policy*

Blau alleges that on or about July 5, 2007, Allianz North America issued a life insurance policy with a face value of $8,000,000 on the life of Dora Zupnick (the "Policy"). (Compl. (Not. of Removal (Dkt. 1), Ex. B (Dkt. 1-2)) ¶ 3; see also Policy (Aff. of David Blau in Opp'n to Def.'s Mot. to Dismiss ("Blau Aff.") (Dkt. 15-2), Ex. A (Dkt. 15-3)) at 1 (showing Allianz North America as issuer of Policy).) According to Blau, the Policy was "delivered" in New York. (Compl. ¶ 5.) The Trust is the owner and beneficiary of the Policy. (Id. ¶ 6.) Blau is the trustee of the Trust. (Id. ¶ 1.) Zupnick was alive as of the filing of the Complaint, and therefore no demand on the Policy has been made. (Id. ¶ 35.)

Blau alleges that Allianz North America has claimed that the Policy has lapsed (id. ¶ 7), and seeks a contrary declaration from this court "that the Policy is in full force and effect and has been continuously in full force and effect since the Policy was issued without any lapses in coverage" (id. ¶ 8). Specifically—although, as discussed below, without much in the way of the particulars—Blau alleges that Allianz North America miscalculated the premiums due under the Policy and New York law (id. ¶¶ 9-15), transmitted a deficient notice of cancellation

(id. ¶¶ 16-19), and otherwise failed to comply with the terms of the Policy and "applicable law" (id. ¶¶ 20-29).

Blau further alleges that Allianz North America is estopped from canceling the Policy, and that Blau is, in fact, "prepared and has always been prepared to pay any outstanding premiums on the Policy . . . ." (Id. ¶¶ 30-32.)

### b. *Jurisdictional Allegations*

Blau does not allege either his own citizenship or the citizenship of the Trust. He alleges that Zupnick (the insured) is a citizen of New York residing in Brooklyn (id. ¶ 4), and that Allianz North America is a Minnesota corporation "engaged in the business of selling insurance products insuring the lives of citizens of the State of New York" (id. ¶ 2; see also Decl. of Dawn B. Williams in Supp. of Allianz North America's Mot. to Dismiss ("Williams Decl.") (Dkt. 14-2), Ex. 1 (Dkt. 14-3) (declaring that Allianz North America is incorporated in Minnesota).)

### 2. Additional Factual Materials Submitted by Parties

Both parties submitted additional factual materials in connection with the motion to dismiss.[3]

---

[3] In deciding a motion to dismiss for lack of personal jurisdiction, the court may consider factual issues beyond the pleadings. See Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981); see also Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 86 (2d Cir. 2013) (per curiam) ("Nor did the district court err in considering materials outside the pleadings, as we have made clear that a district court may do so without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment."); Yash Raj Films (USA) Inc. v. Dishant.com LLC, No. 08-CV-2715 (ENV) (RML), 2009 WL 4891764, at *1 n.1 (E.D.N.Y. Dec. 15, 2009) ("A motion to dismiss a claim for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) is inherently a matter requiring the resolution of factual issues outside of the pleadings, and accordingly all pertinent documentation submitted by the parties may be considered in deciding the motion." (internal quotation marks and citation omitted)).

Similarly, in deciding a motion to dismiss for insufficient service of process, the court may consider materials outside of the pleadings without converting the motion into one for summary judgment. See, e.g., Darden v. DaimlerChrysler N. Am. Holding Corp., 191 F. Supp. 2d 382, 387 (S.D.N.Y. 2002) ("[I]n considering a motion to dismiss pursuant to [Rule] 12(b)(5) for insufficiency of process, a Court must look to matters outside the complaint to determine whether it has jurisdiction."); see also Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc., No. 12-CV-2285

Cynthia Rice, Senior Operations Manager for Allianz North America, declared that between 2008 and the present, Allianz North America has not maintained any offices in New York State; rather, business activities in New York State under the "Allianz" name are conducted by Allianz Life Insurance Company of New York ("Allianz New York"), a distinct corporate entity. (Decl. of Cynthia Rice in Supp. of Allianz North America's Motion to Dismiss ("Rice Decl.") (Dkt. 14-6) ¶ 3.) During that same time period, Allianz North America's agents and employees were not authorized to solicit or sell life insurance policies in New York. (Id. ¶ 4; see also Allianz Compliance Guide to Successful Business (Rice Decl., Ex. 2 (Dkt. 14-8)) at 11 ("It is never acceptable for an agent to . . . [s]olicit or sell an Allianz Life Insurance Company of North America product in New York. Only Allianz Life Insurance Company of New York products may be sold in New York.").) Indeed, Allianz North America is not licensed to do business in New York. (See Apr. 24, 2014, Ltr. from N.Y. State Dep't of Fin. Servs. (Not. of Removal, Ex. B) at ECF page 2 ("Allianz Life Insurance Company of North America formerly known as North American Life and Casualty Company . . . is not authorized to do business in this State . . . ."); see also Williams Decl., Ex. 2 (Dkt. 14-4) (search results of insurance companies licensed by New York Department of Financial Services ("DFS"), listing Allianz New York but not listing Allianz North America).)

---

(ADS) (ARL), 2014 WL 5822628, at *10 (E.D.N.Y. Nov. 16, 2014) (citing Darden, 191 F. Supp. 2d at 387); C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc., 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005) ("[I]n resolving the motion, the court 'must look to matters outside the complaint' to determine what steps, if any, the plaintiff took to effect service." (quoting Darden, 191 F. Supp. 2d at 387)).

Finally, even where the defendant only moves to dismiss pursuant to Rule 12(b)(6) (and not on jurisdictional or other grounds that allow for consideration of materials outside of the pleadings), a court is permitted to consider "documents attached to the complaint as an exhibit or incorporated in it by reference," such as the life insurance policy itself. See, e.g., Strom v. Goldman, Sachs & Co., 202 F.3d 138, 140 n.1 (2d Cir. 1999) (noting that the district court correctly considered a life insurance policy in resolving a Rule 12(b)(6) motion to dismiss); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991) (holding that in deciding a Rule 12(b)(6) motion to dismiss, district court can consider documents incorporated by reference into the complaint, particularly where the plaintiff is on notice of the specific documents).

Both parties submitted the Policy (referenced throughout the Complaint) in connection with the pending motion. (See Policy (Rice Decl., Ex. 4 (Dkt. 14-10); Blau Aff., Ex. A (Dkt. 15-3)).) On the Policy application, Zupnick listed her place of residence as Brooklyn, New York, and listed the Trust's address as Brooklyn, New York. (See Policy at ECF page 12.) The Policy itself also references the State of New Jersey in several ways.[4] The letters "NJ" appear in the lower left-hand corner of almost all pages of the Policy. (Id.) According to Ms. Rice, "[w]hen 'NJ' is used as a prefix or suffix to a policy form number, that indicates that the policy was issued in New Jersey." (Rice Decl. ¶ 11.) Although Plaintiff alleges in the Complaint that the Policy was "delivered" in New York (see Compl. ¶ 5), documentary evidence submitted by the parties appears to demonstrate that the Policy was delivered in New Jersey,[5] as attested by Zupnick on the Policy itself. (See Life Insurance Policy Worksheet (Rice Decl., Ex. 3 (Dkt. 14-9)) at 1, 5 (listing "Delivery state" as "NJ" and signed by Zupnick); Policy at ECF page 20 (indicating that Zupnick signed Policy application in Hackensack, New Jersey, on April 11, 2008); Illustration Prepared for Zupnick, Dora (Rice Decl., Ex. 5 (Dkt. 14-11)) at 1, 5 (sales materials prepared by agent and signed by Zupnick, indicating "State" as "New Jersey"); Statement of Policy Cost and Benefit Information (Rice Decl., Ex. 7 (Dkt. 14-13)) at 1, 5 (summary of Policy prepared by agent and signed by Zupnick, indicating "State" as "New Jersey"); see also Policy Delivery Invoice (Rice Decl., Ex. 1 (Dkt. 14-7)) at 1 (letter from

---

[4] Based on the court's review of the Policy, it does not appear to contain a choice-of-law provision or a forum selection clause.

[5] "Delivery" is a term-of-art in the insurance context, and the place in which an insurance contract is delivered may affect which substantive law and regulations govern the policy. See, e.g., N.Y. Ins. Law § 3211(a) ("No policy of life insurance . . . delivered or issued for delivery in this state . . . shall terminate or lapse by reason of default in payment of any premium, installment, or interest on any policy loan in less than one year after such default, unless, for scheduled premium policies, a notice shall have been duly mailed at least fifteen and not more than forty-five days prior to the day when such payment becomes due . . . ." (emphasis added)). Ultimately, a plaintiff seeking to take advantage of insurance regulations such as section 3211 must prove "that the policy was physically delivered in New York before she [is] entitled to the benefit of the statute's provisions." Bretschger v. Home Life Ins. Co., 446 N.Y.S.2d 621, 676 (App. Div. 1981).

Innovative Brokers Corp. to agent, noting that "[t]he State of Sale for this Contract is New Jersey; any Signatures for Delivery Requirements should be signed in New Jersey to be acceptable").)

Zupnick applied for the policy through a broker and an insurance agent, both of whom were located in New York. (See Blau Aff. ¶ 4; see also Policy Delivery Invoice at 1 (listing New York address for Innovative Brokers Corp., and listing New York address for Abraham Friedman, Zupnick's agent).) Allianz North America routinely mailed invoices and grace notices to the Trust's address in New York. (See Blau Aff. ¶ 6; see also, e.g., Jan. 9, 2011, Not. of Premium Due (Blau Aff., Ex. C (Dkt. 15-5)); Mar. 10, 2011, Grace Period Not. (Blau Aff., Ex. E (Dkt. 15-7)); Apr. 9, 2011, Lapse Not. (Blau Aff., Ex. F (Dkt. 15-8)).) The Trust mailed premium payments to Allianz North America from New York, in the form of checks drawn upon a New York bank. (See Blau Aff. ¶ 8; see also, e.g., Check No. 191 (Blau Aff., Ex. G (Dkt. 15-9)).) Agents acting on behalf of Blau frequently called Allianz North America via telephone from New York to inquire about premiums due. (See Blau Aff. ¶ 7.) And, on one occasion, Allianz North America sent investigators to New York to interview Zupnick concerning Zupnick's Policy application. (Id. ¶ 10.)

## B. Procedural History

### 1. Removal from New York Supreme Court

Blau originally filed the instant action in New York Supreme Court, Kings County, Index No. 502877/2014. (See Not. of Removal.) On May 22, 2014, Allianz North America removed the action to this court on the basis of diversity jurisdiction. (See id. at 1-4.) During a pre-motion conference held on July 1, 2014, the court granted Allianz North America leave to file its motion to dismiss. (See July 1, 2014, Min. Entry.)

6

2. Service of Process

Allianz North America received notice of Blau's state court action by mail from the Minnesota Secretary of State on April 22, 2014. (See Decl. of Sandra Gudvangen in Supp. of Allianz North America's Not. of Removal ("Gudvangen Decl.") (Dkt. 2) ¶ 3; Not. of Removal, Ex. A (Dkt. 1-1).) Allianz North America also received notice of Blau's state court action by mail from DFS on April 28, 2014. (See Gudvangen Decl. ¶ 4; Not. of Removal, Ex. B (Dkt. 1-2).) As of September 2, 2014, the date on which the motion to dismiss was filed, "Allianz [North America] ha[d] not received from the plaintiff in this matter, via certified or registered mail with return receipt requested, any notice or a copy of process served upon the New York Department of Financial Services." (Rice Decl. ¶ 5.)

However, according to Blau's counsel, as of August 8, 2014 (the day Blau served his opposition brief), "[Blau] [was] in the process of re-serving the summons and complaint upon Allianz." (Decl. of Alexander J. Sperber in Opp'n to Def.'s Mot. to Dismiss (Dkt. 15-1) ¶ 2.) Indeed, on August 21, 2014, Blau electronically filed a letter dated August 14, 2014, from DFS. (See Aug. 14, 2014, Ltr. from DFS (Dkt. 13).) The letter references Allianz New York in the subject line and the main text, and notifies the recipients that Allianz New York was served via DFS on August 12, 2014. (Id. at 1.) The letter references the Supreme Court, State of New York, and also references the docket number "CV-3202," which matches the docket number in this court. (Id.) Allianz North America is not mentioned anywhere in the letter; the closing notes that a duplicate was sent to "Defendant," listed in the letter as "Allianz Life Insurance Company New York." (Id.)

## II.   LEGAL STANDARDS

### A.   Personal Jurisdiction

"In deciding a pretrial motion to dismiss for lack of personal jurisdiction a district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013) (per curiam) (quoting Marine Midland Bank, N.A. v. Miller, 664 F.2d 899, 904 (2d Cir. 1981)). Where the court opts not to hold a hearing or order jurisdictional discovery, the plaintiff need only make a prima facie showing of jurisdiction.[6] Id. (citing Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990)). "A prima facie case requires non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." Chirag v. MT Marida Marguerite Schiffahrts, 604 F. App'x 16, 19 (2d Cir. 2015) (summary order) (citing Jazini v. Nissan Motor Co., 148 F.3d 181, 186 (2d Cir. 1998)); see also Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001) ("A plaintiff may carry this burden 'by pleading in good faith . . . legally sufficient allegations of jurisdiction, i.e., by making a 'prima facie showing' of jurisdiction.") (quoting Jazini, 148 F.3d at 184). "A plaintiff can make this showing through his own affidavits and supporting materials, containing an averment of facts that, if credited would suffice to establish jurisdiction over the defendant." Whitaker, 261 F.3d at 208 (internal quotation marks, citation, and alteration omitted). "Where the issue is addressed on affidavits, all allegations are construed in the light

---

[6] A defendant waives its personal jurisdiction defense by failing to raise it in its responsive pleading. See Fed. R. Civ. P. 12(h)(1). However, the initial removal of an action to federal court from state court does not constitute a waiver of a defendant's personal jurisdiction defense. See Cantor Fitzgerald, L.P. v. Peaslee, 99 F.3d 152, 157 n.4 (2d Cir. 1996) (citing Holzsager v. Valley Hosp., 646 F.2d 792, 796 (2d Cir. 1981)).

most favorable to the plaintiff and doubts are resolved in the plaintiff's favor." Id. (internal quotation marks, citation, and alteration omitted).

"Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits—subject, of course, to certain constitutional limitations of due process." Henderson v. I.N.S., 157 F.3d 106, 123 (2d Cir. 1998) (quoting Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994)). Accordingly, the court first looks to New York State law to determine whether it has personal jurisdiction over Allianz North America, and if there is a statutory basis for jurisdiction, the court next determines whether New York's exercise of jurisdiction would comport with the Due Process Clause of the Fourteenth Amendment. See Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 124 (2d Cir. 2002) (Sotomayor, J.). Where there is no statutory basis for jurisdiction, the court need not perform the constitutional analysis. Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007) ("If jurisdiction is statutorily impermissible, of course, we need not reach the question of its constitutionality.").

    1.  Potential Statutory Bases

Section 301 of the New York Civil Practice Law and Rules ("CPLR") confers "general" personal jurisdiction over a non-domiciliary defendant on causes of action unrelated to conduct in New York State where the defendant is "'present' within the State by virtue of their 'doing business' here." McGowan v. Smith, 419 N.E.2d 321, 323 (N.Y. 1981). "Common factors used to determine whether a defendant is 'doing business' are: 'the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York.'" Sound Around Inc. v. Audiobahn, Inc., No. 07-CV-773 (RJD) (CLP), 2008 WL 5093599, at *4 (E.D.N.Y.

Nov. 24, 2008) (quoting <u>Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.</u>, 918 F.2d 1039, 1043 (2d Cir. 1990)). This standard is "stringent, because a defendant who is found to be doing business in New York in a permanent and continuous manner may be sued in New York on causes of action wholly unrelated to acts done in New York." <u>Overseas Media, Inc. v. Skvortsov</u>, 407 F. Supp. 2d 563, 567-68 (S.D.N.Y. 2006) (internal quotation marks and citation omitted), <u>aff'd</u>, 277 F. App'x 92 (2d Cir. 2008) (summary order).

"Specific" personal jurisdiction is governed by New York's long-arm statute, CPLR section 302(a), which confers personal jurisdiction over a non-domiciliary for certain acts by the non-domiciliary. Relevant here, section 302(a)(1) confers jurisdiction where the defendant "transacts any business within the state or contracts anywhere to supply goods or services in the state," and the cause of action arises out of that conduct. <u>See A.I. Trade Fin., Inc. v. Petra Bank</u>, 989 F.2d 76, 80-81 (2d Cir. 1993) (explaining that section 302(a)(1) contains two alternative jurisdictional theories: (1) transacting any business in the state, and (2) contracting anywhere to supply goods or services in the state).

Finally, New York Insurance Law § 1213 provides an alternative basis of "subject[ing] certain insurers to the jurisdiction of the courts of this state in suits by or on behalf of insureds or beneficiaries under certain insurance contracts." N.Y. Ins. Law § 1213(a). Specifically, section 1213 applies to insurers that are not otherwise authorized or licensed to do business in New York. <u>Id.</u> Section 1213(b)(1) provides that:"[a]ny of the following acts, in this state, effected by mail or otherwise, . . . is equivalent to and constitutes [the unauthorized insurer's] appointment of the superintendent [of the DFS], and his successors in office, to be its true and lawful attorney upon whom may be served all lawful process in any proceeding instituted by or on behalf of an insured or beneficiary arising out of any such contract of insurance":

(A)    the issuance or delivery of contracts of insurance to residents of this state or to corporations authorized to do business therein,

(B)    the solicitation of applications for such contracts,

(C)    the collection of premiums, membership fees, assessments or other considerations for such contracts, or

(D)    any other transaction of business . . . .

Id. § 1213(b)(1).

### 2. Due Process Inquiry

To determine if the exercise of personal jurisdiction comports with due process, the court analyzes: (1) whether the defendant had certain minimum contacts with the forum state, and (2) whether it would be reasonable for the court to exercise jurisdiction over the defendant. See Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 171 (2d Cir. 2010).

A defendant has sufficient "minimal contacts" with the forum state when it "purposefully avails itself of the privilege of conducting activities within the forum State," Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985), and therefore "could foresee being 'haled into court' there," U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., 251 F.3d 135, 152 (2d Cir. 2001). It is the defendant's contacts with the forum that matter, not the plaintiff's. See Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014) (explaining that the "analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there"); id. at 1123 ("Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." (quoting Burger King, 471 U.S. at 475)).

11

Second, the reasonableness inquiry "asks whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 568 (2d Cir. 1996) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)). In performing the reasonableness analysis, a court considers:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

U.S. Titan, 241 F.3d at 152.

## B.    Service of Process

"When a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." Dickerson v. Napolitano, 604 F.3d 732, 752 (2d Cir. 2010); see also Khan v. Khan, 360 F. App'x 202, 203 (2d Cir. 2010) (summary order) (citing Burda Media, Inc. v. Viertel, 417 F.3d 292, 298 (2d Cir. 2005)). But, "[w]here a court has not conducted a 'full-blown evidentiary hearing on the motion, the plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials.'" Garnett-Bishop v. N.Y. Cmty. Bancorp, Inc., No. 12-CV-2285 (ADS) (ARL), 2014 WL 5822628, at *9 (E.D.N.Y. Nov. 16, 2014) (quoting Colvin v. State Univ. Coll. at Farmingdale, No. 13-CV-3595 (SJF) (ARL), 2014 WL 2863224, at *12 (E.D.N.Y. June 19, 2014)). "'Conclusory statements' that service was properly effected are insufficient to carry that burden." C3 Media & Mktg. Grp., LLC v. Firstgate Internet, Inc., 419 F. Supp. 2d 419, 427 (S.D.N.Y. 2005).

Under Federal Rule of Civil Procedure 4(h)(1), service may be effected upon a corporation domestically in the following manners:

> (A)    in the manner prescribed by Rule 4(e)(1) for serving an individual; or
>
> (B)    by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant.

Fed. R. Civ. P. 4(h)(1). Rule 4(e)(1), in turn, provides that a plaintiff may serve a defendant by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1).

## C.    Failure to State a Claim

Federal Rule of Civil Procedure 8(a)(2) requires a plaintiff to plead a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests," Keiler v. Harlequin Enters. Ltd., 751 F.3d 64, 70 (2d Cir. 2014). "Fair notice" is "that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so that it may be assigned the proper form of trial." Wynder v. McMahon, 360 F.3d 73, 79 (2d Cir. 2004) (quoting Simmons v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995)). "Rule 8(a) 'contemplate[s] the statement of circumstances, occurrences, and events in support of the claim presented' and does not authorize a pleader's 'bare averment that he wants relief and is entitled to it.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 n.3 (2007) (alteration in original) (quoting 5 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1202 (3d ed. 2004)).

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a plaintiff's claims for relief. Patane v. Clark, 508 F.3d 106, 112

13

(2d Cir. 2007). In reviewing a complaint, the court must accept as true all allegations of fact, and draw a reasonable inference from these allegations in favor of the plaintiff. ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).

A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). Plausibility "is not akin to a 'probability requirement,'" but requires "more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (quoting Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "[M]ere 'labels and conclusions' or 'formulaic recitation[s] of the elements of a cause of action will not do'; rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (emphasis in original) (quoting Twombly, 550 U.S at 555).

## III. DISCUSSION

As discussed further below, the court holds that Blau has made a prima facie showing that the court has personal jurisdiction over Allianz North America. Blau has not, however, made a prima facie showing of effective service, and, more significantly, has failed to state a claim in the Complaint. Accordingly, the court grants without prejudice Allianz's motion to dismiss for failure to state a claim under Rule 12(b)(6), grants Blau leave to file an amended complaint, and should he file an amended complaint, directs Blau to serve it properly pursuant to Federal Rule of Civil Procedure 4, as if it was the initial pleading in this action.

14

### A. Personal Jurisdiction over Allianz North America

The court has not held an evidentiary hearing regarding Allianz North America's personal jurisdiction defense. Accordingly, the court must determine, at this stage in the proceeding, whether Blau has made a prima facie showing that the court has personal jurisdiction over Allianz North America. The court concludes that Blau has not made such a showing under section 301 of the CPLR or section 1213 of the New York Insurance Law, but has made such a showing under section 302(a)(1) of the CPLR.

### 1. General Personal Jurisdiction

As an initial matter, although Blau entitled a section of his opposition brief "general jurisdiction," he actually only argues that the court has specific personal jurisdiction over Allianz North America. (See Blau's Mem. of Law in Opp'n to Def.'s Mot. to Dismiss the Compl. ("Blau Mem.") (Dkt. 15) at 10-12 (discussing only section 302(a) of the CPLR (the long-arm statute), and not section 301 of the CPLR (which confers general personal jurisdiction)); see also Allianz North America's Reply Mem. in Supp. of Mot. to Dismiss the Compl. ("Allianz N. Am. Reply") (Dkt. 16) at 3 n.2 (arguing that Blau has waived general personal jurisdiction argument).) As Blau has not actually alleged general personal jurisdiction, the court moves on to the analysis of whether it has specific personal jurisdiction over Allianz North America, as Blau does contend.

### 2. Specific Personal Jurisdiction

#### a. *New York Insurance Law § 1213(b)*

Blau argues that section 1213(b) of the New York Insurance Law confers personal jurisdiction over Allianz North America in the precise scenario at issue here—an insurance company not authorized to do business in New York insured the life of a New York resident, and

15

collected by mail premiums from a payor located in New York. (See Blau's Mem. at 8-9 (citing N.Y. Ins. Law § 1213(b)(1)(C)).) Allianz North America counters that section 1213(b) only confers jurisdiction (under any of its provisions, subsection (b)(1)(C) included) where the relevant insurance policy was delivered in or mailed to New York. (See Allianz North America's Mem. of Law in Supp. of Mot. to Dismiss the Compl. ("Allianz N. Am. Mem.") (Dkt. 14-1) at 5-7.)

Although the language of the statute could be clearer, Blau reads it too broadly, and ignores several decisions by New York State courts and federal district courts discussing section 1213. Cf. Danaher Corp. v. Travelers Indem. Co., No. 10-CV-121 (JPO), 2014 WL 7008938, at *3 (S.D.N.Y. Dec. 11, 2014) [Danaher II] ("The precise relationship between these statutory bases for jurisdiction over insurers is not well defined in the New York case law."). As an initial matter, the substantive provisions of section 1213(b) must be read in conjunction with the legislative intent of the statute, which is codified in section 1213(a):

> The purpose of this section is to subject certain insurers to the jurisdiction of the courts of this state in suits by or on behalf of insureds or beneficiaries under certain insurance contracts. The legislature declares that it is a subject of concern that many residents of this state hold policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state, thus presenting to such residents the often insuperable obstacle of resorting to distant forums for the purpose of asserting legal rights under such policies.

N.Y. Ins. Law § 1213(a) (emphasis added). "[T]he intended beneficiaries of this section are New York residents who 'hold policies of insurance issued or delivered in this state . . . .'" Am. Indep. Ins. v. Heights Chiropractic Care, P.C., 811 N.Y.S.2d 904, 906 (Sup. Ct. 2006) (emphasis added) (quoting N.Y. Ins. Law § 1213(a)). The four bases of jurisdiction enumerated in section 1213(b), therefore, all require that the relevant policy be issued or delivered in New

York. See, e.g., Associated Aviation Underwriters v. Arab Ins. Grp. (B.S.C.), No. 02-CV-4983 (GBD), 2003 WL 1888731, at *3 (S.D.N.Y. Spr. 16, 2003) ("Simply put, it is the act of issuing or delivering a policy into New York, that constitutes the grounds by which a New York court may assert personal jurisdiction over an unauthorized alien insurer under subsection (b)(1)(A)."); Chase Manhattan Bank v. AXA Reins. UK PLC, 752 N.Y.S.2d 17, 19 (App. Div. 2002) ("Section 1213(b)(1) requires the acts necessary to confer jurisdiction to be 'acts in this state, effected by mail or otherwise.' Thus, had the [insurance contract] been mailed to [third-party plaintiff] in New York, the statute would have conferred jurisdiction."); see also Clifton Prods., Inc. v. Am. Universal Ins. Co., 169 F. Supp. 842, 845 (S.D.N.Y. 1959) (construing section 1213's statutory predecessor, and explaining that the statute represented the Legislature's exercise of "its regulatory power over insurance business conducted in the state for the benefit of New York residents" (emphasis added)); cf. Morgan v. Am. Risk Mgmt., Inc., No. 89-CV-2999 (JSM) (KAR), 1990 WL 106837, at *1, 7 (S.D.N.Y. July 20, 1990) (finding personal jurisdiction over out-of-state defendants where the defendants "executed and delivered the [relevant insurance contracts] to [the plaintiff] in New York").

Blau is correct that section 1213(b)'s purpose is to subject unauthorized foreign and alien insurers to jurisdiction in New York (see Blau Mem. at 9), but section 1213(b) does not confer personal jurisdiction over a life insurance company simply by virtue of it insuring the life of a New York resident via a policy delivered in another state.[7] After all, "the requisite contacts with

---

[7] Although Blau alleged in the Complaint that the Policy was delivered in New York (see Compl. ¶ 5), his affidavit opposing the motion to dismiss does not aver that the Policy was delivered in New York—instead, Blau asserts only that Zupnick's broker and agent were located in New York (Blau Aff. ¶ 4). Indeed, in the affidavit, Blau references Zupnick's Policy application, which as discussed above, is appended to the Policy itself. (Id. ¶ 3.) And, significantly, Blau attached as an exhibit to the affidavit the Policy and application, which were signed by Zupnick, and which expressly provide that Zupnick signed in Hackensack, New Jersey. (Policy at ECF page 20.) Although Blau's memorandum in opposition to the motion to dismiss is not entirely clear, it appears that he now admits (albeit only in characterizing Allianz North America's own argument) that the Policy was delivered in New Jersey, and not New York. (See Blau Mem at 4 ("Allianz now feigns disbelief that it has been 'dragged' into a New York court to

17

the forum State must result from activities of the defendant, and not those of the party seeking to assert jurisdiction." Ford v. Unity Hosp., 299 N.E.2d 659, 663 (N.Y 1973) (finding no personal jurisdiction over out-of-state insurer under section 1213(b)'s statutory predecessor).

Blau further argues that jurisdiction is proper under the terms of section 1213(b)(1)(C), since Allianz North America has mailed premium invoices to a New York address, thereby "collecting" premiums in New York. See N.Y. Ins. Law § 1213(b)(1) ("Any of the following acts in this state, effected by mail or otherwise, by an unauthorized foreign or alien insurer . . . (C) the collection of premiums, membership fees, assessments or other considerations for such contracts, . . . is equivalent to and constitutes its appointment of the superintendent, and his successors in office, to be its true and lawful attorney upon whom may be served all lawful process . . . ." (emphasis added)). Blau ignores, however, section 1213(b)(1)(C)'s reference to "such contracts," which in turn refers to section 1213(a)'s opening provision that the statute only relates to "policies of insurance issued or delivered in this state by insurers while not authorized to do business in this state." Cf. Heights Chiropractic Care, 811 N.Y.S.2d 904 at 906 (holding that section 1213 should be "construed narrowly" due to its abrogation of the common law definition of "doing business" (citing Sherman v. Alaskan Oil, Inc., 606 N.E.2d 1365, 1368 (N.Y. 1992)); Weinstein v. Occidental Life Ins. Co., 134 N.Y.S.2d 207, 208 (Sup. Ct. 1954) (holding, under section 1213's statutory predecessor, that court lacked personal jurisdiction over

litigate the policy and asks this Court to dismiss the action because the policy was delivered in New Jersey.").) Here, where "the allegations of a complaint are contradicted by documents made a part thereof, the document controls and the court need not accept as true the allegations of the complaint." Barnum v. Millbrook Care Ltd. P'ship, 850 F. Supp. 1227, 1232-33 (S.D.N.Y. 1994), aff'd, 43 F.3d 1458 (2d Cir. 1994) (table decision).

The court recognizes that in Dorchester Financial Securities, Inc. v. Banco BRJ, S.A., the Second Circuit rejected a line of decisions from the Southern District of New York that permitted a defendant moving to dismiss under Rule 12(b)(2) to gain dismissal by rebutting a plaintiff's "unsupported allegations" with "direct, highly specific testimonial evidence regarding a fact essential to jurisdiction." 722 F.3d 81, 84 (2d Cir. 2013) (per curiam). Here, unlike in those (rejected) cases, the Policy is integral to the Complaint (and was in fact submitted in connection with the motion to dismiss by both Blau and Allianz North America), and therefore the court's consideration of the Policy (and its indication that the policy was delivered in New Jersey) for purposes of its personal jurisdiction analysis does not run afoul of Dorchester.

unlicensed insurer that mailed premium payment notices to New York at insured's request, but had no other connection to New York State, and originally issued the policy in California to California resident).

If read broadly, certain of the cases cited by Blau do support his argument, although none are directly on point. See, e.g., Constantine v. Stella Maris Ins. Co., 948 N.Y.S.2d 802, 805 (App. Div. 2012) (finding that insurer did not "transact business" in New York for purposes of Insurance Law jurisdiction, but finding personal jurisdiction under state long-arm statute, CPLR section 302(a)(1)); id. at 807 (Peardotto, J., concurring) (concluding that plaintiff also showed that defendant transacted business in New York under Insurance Law, and therefore jurisdiction was also proper under section 1213(b)(1)); Cavaliere v. N.J. Ins. Underwriting Ass'n, 653 N.Y.S.2d 692, 693 (App. Div. 1997) (finding no personal jurisdiction over insurer, but stating "the plaintiff failed to establish that the insurance policy was issued or delivered in New York or that premiums were mailed from New York so as to invoke § 1213(b)(1)(A) or (C)"); U.N.F. Servs., Inc. v. Ins. Co. of N. Am., 653 N.Y.S.2d 366, 367 (App. Div. 1997) (affirming finding of personal jurisdiction over out-of-state insurer where insurer mailed policies and policy renewals to plaintiff in New York, and also mailed premiums and servicing documents to plaintiff in New York); Zacharakis v. Bunker Hill Mut. Ins. Co., 120 N.Y.S.2d 418, 420 (App. Div. 1953) (under section 1213's statutory predecessor, finding personal jurisdiction where the policy was mailed by defendant from Philadelphia into New York State). None of these cases stand directly for the proposition that, where an insurance policy is issued outside of New York State, the mere mailing of premiums from inside the state subjects the foreign insurer to personal jurisdiction in New York.

19

Finally, section 1213(b)(1)(D) of the Insurance Law also does not confer jurisdiction over Allianz North America. That provision confers jurisdiction for "any other transaction of business," but again must be considered in light of section 1213(b)(1)'s introductory language making clear that it applies to "[a]ny of the following acts in this state, effected by mail or otherwise, by an unauthorized foreign or alien insurer." (emphasis added). Courts that have construed this provision have concluded that it is duplicative of the "transacting business" provision of the long-arm statute, CPLR section 302(a)(1). See, e.g., Danaher II, 2014 WL 7008938, at *4 (recognizing overlap between "any other transaction of business" language in section 1213(b)(1)(D) and "transacts any business" language in section 302(a)(1)); Associated Aviation Underwriters, 2003 WL 18888731, at *5 ("The 'transacting business' requirement of subsection (b)(1)(D) is analogous to that found in CPLR section 302(a)(1)." (citing Farm Family Mut. Ins. Co. v. Nass, 481 N.Y.S.2d 952, 954 (Sup. Ct. 1984) (interpreting "any other transaction of business" provision of section 1213(b)(1)(D)'s statutory predecessor to be analogous to CPLR section 302(a)(1)'s "transacts any business" provision), aff'd, 503 N.Y.S.2d 820 (App. Div. 1986)))); Future Ways, Inc. v. Odiorne, 697 F. Supp. 1339, 1343 (S.D.N.Y. 1988) (noting that section 1213(b)(1)(D) is analogous to CPLR section 302(a)(1)); cf. Armada Supply Inc. v. Wright, 858 F.2d 842, 848-49 (2d Cir. 1988) (simultaneously analyzing personal jurisdiction over out-of-state insurer under section 1213(b)(1)(D) and CPLR section 302(a)(1)).

b.      *Long-arm Jurisdiction Under CPLR Section 302(a)(1)*

Blau next argues that CPLR section 302(a)(1) confers personal jurisdiction over Allianz North America for purposes of this case (see Blau Mem. at 10-12), and that such jurisdiction would comport with due process requirements (see id. at 12-14). Allianz North America responds that CPLR section 302(a)(1) does not confer personal jurisdiction, since the company

has not transacted any business in New York State, and that even if the language of CPLR section 302(a)(1) purported to confer jurisdiction, the extension of jurisdiction given the facts at issue would violate the Due Process Clause of the Fourteenth Amendment. (See Allianz N. Am. Mem. at 7; Allianz N. Am. Reply at 3-7.)

CPLR section 302(a)(1) provides that a court has personal jurisdiction over a non-domiciliary where the non-domiciliary "transacts any business within the state or contracts anywhere to supply goods or services in the state," and the cause of action arises out of such action. CPLR section 302(a)(1) thus contains two separate bases for jurisdiction—(i) transacting business within the state, or (ii) contracting anywhere to supply goods or services in the state.

Although his briefing could be clearer, Blau asserts that Allianz North America's aggregate conduct rendered its activities a "transaction of business within the state," and further argues that Allianz North America has contracted to provide a service within the state. Specifically, Blau asserts that Allianz North America (1) used unaffiliated insurance brokers and insurance agents who were located in New York State (Blau Aff. ¶ 4); (2) knowingly issued a policy to a New York resident (see Policy at ECF page 12 (indicating that Zupnick resided in Brooklyn, New York at the time she completed the Policy application)); (3) mailed invoices and notices related to the Policy to the Trust's address in New York (Blau Aff. ¶ 6); (4) communicated with Blau's agents when they telephoned the company from within New York (id. ¶ 7); (5) received checks drawing on New York banks sent to its out-of-state offices from within New York (id. ¶ 8); (6) received correspondence related to the Policy sent from within New York (id. ¶ 9); and (7) sent investigators to New York on one occasion to determine whether the Policy was issued upon a fraudulent application (id. ¶ 10). Although Blau admits that certain of these activities did not physically occur within New York, he emphasizes that "[a]

defendant need not physically enter New York State in order to transact business, 'so long as the defendant's activities here were purposeful.'" Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 61 (2d Cir. 2012) (quoting Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs., 850 N.E.2d 1140, 1142 (N.Y. 2006)).

As a starting point, the existence of a contract between an out-of-state defendant and a citizen of the forum state, on its own, generally does not establish personal jurisdiction over the defendant, even for an action arising out of such contract. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985) ("If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). Thus, the fact that Allianz North America entered into a contract in New Jersey with a New York resident does not, on its own, confer personal jurisdiction over Allianz North America in New York State.

However, where an insurer located elsewhere contracts to insure a risk within New York State, courts have held that the insurer has contracted to perform a service in New York, and therefore Blau has made a prima facie showing that personal jurisdiction is proper in this case under section 302(a)(1). For example, in Armada Supply Inc. v. Wright, the Second Circuit held that jurisdiction was proper over a Brazilian insurer who insured cargo en route to New York by ship. 858 F.2d 842, 846-48 (2d Cir. 1988). With respect to the "contracts anywhere" provision of CPLR section 302(a)(1), the court explained that "contracting to insure property located within a jurisdiction, even if the presence of that property is transitory, subjects a foreign marine-insurer to jurisdiction on suits over such insurance." Id. at 849. Six years later, in a case involving an automobile insurance policy, then-Judge Sotomayor held that jurisdiction in New York State over a foreign insurer was proper, since the insurer "issu[ed] in Bermuda an insurance

22

policy with the expectation that it could be claimed upon for events occurring within New York." Ins. Co. of N. Am. v. Pyramid Ins. Co. of Berm. Ltd., No. 92-CV-1816 (SMS), 1994 WL 88754, at *2 (S.D.N.Y. Mar. 16, 1994). The court further explained that in the context of the "contracts anywhere" to perform services provision (as opposed to the "transacts business" provision), the extensiveness of the foreign insurer's actual contacts with New York is not the key inquiry.[8] See id. at *2; see also, e.g., A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 82 (2d Cir. 1993) (holding that contract to provide a financial guaranty payable in New York is a contract to perform services in the state within the meaning of CPLR 302(a)(1) (citing Armada Supply, 858 F.2d at 849)).

　　The court is not aware of any case in the life insurance context that discusses the application of Armada Supply and Pyramid Insurance Co., which both involved other forms of insurance. But considering that Blau need only present a prima facie case at this stage of the litigation, the court finds these precedents to be highly persuasive. Nor is Bohn v. Bartels, 620 F. Supp. 2d 418 (S.D.N.Y. 2007), to the contrary. (See Allianz N. Am. Reply at 4-5.) There, in connection with an automobile accident that occurred at a United States military base in Portugal, the district court held that it lacked personal jurisdiction over a Portuguese automobile insurer that issued a policy to a New York resident stationed in Portugal. Bohn, 620 F. Supp. 2d

---

[8] The court also addressed the insurer's due process argument under World-Wide Volkswagen v. Woodson, 444 U.S. 286 (1980). In World-Wide Volkswagen, "the Supreme Court held that held that an Oklahoma court could not assert jurisdiction over a New York dealer who had sold a car in New York to a customer who drove it to Oklahoma and had an accident there." Pyramid Ins. Co., 1994 WL 88754, at *2. But, according to the Pyramid Insurance Co. court, "[t]he local sale of a car to a purchaser whose ultimate destination was unpredictable is readily distinguishable from the activity of an insurer such as Pyramid which issues a policy intended and known to be in continual effect throughout the country." Id. Here, at least based on Blau's prima facie showing, Allianz North America's connection to New York is even stronger than the insurer's in Pyramid Insurance Co. Allianz North America very likely knew that Zupnick was a New York resident at the time it issued the Policy, and therefore the fact that a dispute has arisen in New York State concerning whose Policy cannot be viewed as the "mere 'unilateral activity'" of Zupnick. World-Wide Volkswagen, 444 U.S. at 298 (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)); see also Future Ways, Inc. v. Odiorne, 697 F. Supp. 1339, 1342 (S.D.N.Y. 1988) (no personal jurisdiction under CPLR section 302(a)(1) where insurer merely knew that insured was engaged in interstate commerce, but did not know that insured's goods would enter into New York).

at 425-26. The court explained that the mere fact that the insured was a New York domiciliary was not sufficient to confer personal jurisdiction over the insurer; in other words, "New York was not a factor until [the victim] filed her claims here [and] [the insurer] cannot be said to have made a promise specifically to perform services in New York." Id. at 426. As an initial matter, the Bohn decision neither cites nor discusses Armada Supply or Pyramid Insurance Co. In any event, unlike in Bohn, where there was no connection between the insurer and New York other than the insured's eventual place of residence (in other words, the insurer, a Portuguese company, contracted to provide a service for the insured in Portugal, not in New York), Blau alleges here that Allianz North America contracted to insure Zupnick's life knowing that she resided in New York, and in fact has serviced the Policy knowing that she still resides in New York. Cf., e.g., Caronia v. Am. Reliable Ins. Co., 999 F. Supp. 299, 304 (E.D.N.Y. 1998) (finding jurisdiction under section 302(a)(1) over foreign insurer of livestock without offices or agents in New York because, inter alia, the insurer contracted to provide insurance coverage for a New York insured covering livestock quartered in New York).

Allianz North America does not contest that Blau has satisfied the second prong of the section 302(a)(1) analysis—that this action "arises from" Allianz North America's contract with Zupnick. Finally, because the court concludes, at this stage, that Blau has made a prima facie showing of personal jurisdiction under the "contracts anywhere" provision of CPLR section 302(a)(1), the court need not determine whether he has made a sufficient showing under the "transacts business" provision of the same statute.[9]

---

[9] In holding that Blau has made a prima facie showing that jurisdiction is proper under section 302(a)(1), the court does not determine, at this stage of the litigation, whether New York law, or the law of some other state, applies to the Policy and to the parties' dispute over coverage.

c.    *Due Process Analysis*

Allianz North America argues that if there is a statutory basis for personal jurisdiction over it, litigation of this case in New York would violate its due process rights. (See Allianz N. Am. Mem. at 5 n.2; Allianz N. Am. Reply at 6-7.) The court disagrees.

First, the court finds that Allianz North America has had minimum contacts with the forum state to render jurisdiction proper—namely, it apparently knowingly contracted to provide continuing life insurance coverage to a person residing in New York State. See Danaher II, 2014 WL 7008938, at *6 ("[The foreign insurer] contracted to provide insurance coverage to companies authorized to do business in New York. This is sufficient to show that it purposefully availed itself of the forum."). That Allianz New York (an affiliate of Allianz North America) is authorized to do business in New York State and Allianz North America is not authorized to do business in the state does not render jurisdiction over Allianz North America improper; rather, if Allianz North America sought to avoid being haled into a court within New York State, it could have, for example, refused to insure the lives of New York residents who apply for coverage in other states. Cf. Ford v. Unity Hosp., 299 N.E.2d 659, 663 (N.Y 1973) (finding no jurisdiction where the defendant "purposefully avoided any contacts with New York," and where defendant in fact rejected contacts emanating from within New York). Nor is the exercise of jurisdiction in New York the result of "mere unilateral activity" of Blau and Zupnick. Pyramid Ins. Co., 1994 WL 88754, at *3 (rejecting insurer's constitutional challenge in part because "an insurer such as Pyramid [] issues a policy intended and known to be in continual effect throughout the country"); see also Constantine v. Stella Maris Ins. Co., 948 N.Y.S.2d 802, 806 (App. Div. 2012) (exercising long-arm jurisdiction over out-of-state insurer and rejecting due process challenge). Here, the connection to the forum is even stronger than in Pyramid Insurance Co.: Allianz North

25

America agreed to insure the life of a New York resident; the mere fact that Zupnick traveled across a bridge or through a tunnel to obtain the coverage does not defeat jurisdiction in the state in which she resides.

Walden v. Fiore, 134 S. Ct. 1115 (2014), does not change the result. There, the Supreme Court reiterated, in the context of a forum exercising jurisdiction over an out-of-state tortfesaor causing injury within the forum, "that mere injury to a forum resident is not a sufficient connection to the forum" to render jurisdiction over the tortfeasor proper. Id. at 1125. The Court also clarified that the minimum contacts analysis looks to the defendant's contacts with the forum, and not the plaintiff's; it is "insufficient to rely on a defendant's 'random, fortuitous, or attenuated contacts' [with the forum] or on the 'unilateral activity' of a plaintiff." Id. at 1123 (quoting Burger King, 471 U.S. at 475). Ultimately, the Nevada court's exercise of jurisdiction over a Nevada resident's section 1983 action against an individual in Georgia was improper, since the defendant had no jurisdictionally relevant contacts with Nevada—the underlying tort occurred in Georgia, and "none of [the defendant's] challenged conduct had anything to do with Nevada itself." Id. at 1125.

While Walden may affect the jurisdictional analysis for jurisdiction predicated on CPLR section 302(a)(3)—where a defendant is alleged to have committed "a tortious act without the state causing injury to person or property within the state"—it is less relevant here, for jurisdiction predicated on CPLR section 302(a)(1)—where an action arises out of Allianz North America contracting to provide a service in New York State to a New York State resident. Of course, Walden's warnings that "it is the defendant's conduct that must form the necessary connection with the forum State," and "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction," apply in all cases. Id. at 1122-23. Here,

Allianz North America's minimum contacts with the forum include more than merely entering into a contract with a New York resident. Rather, Allianz North America entered into a contract with a New York resident under which it agreed to provide a service in New York State; this fact satisfies the minimum contacts inquiry. See, e.g., Allianz Glob. Corp. & Specialty v. Advantage Aviation Techs., Inc., 32 F. Supp. 3d 849, 854-55 (E.D. Mich. 2014) (finding jurisdiction proper under long-arm statute covering contract to provide services in the forum, and with respect to due process analysis, distinguishing Walden, since "[t]here was nothing random, fortuitous, or attenuated about defendant negotiating a landing gear repair contract with Michigan residents for a plane regularly operated in Michigan").[10]

Second, the court must weigh whether it would be reasonable to exercise jurisdiction over Allianz North America—in other words, whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice. Litigating this case in New York will impose no more burden on Allianz North America than litigating in another forum (for example, New Jersey) away from its home office; on the other hand, litigating in New York is likely convenient for Blau. See McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957) ("These

---

[10] Also relevant to the due process analysis (but not cited by the parties) is McGee v. International Life Insurance Co., 355 U.S. 220 (1957). There, the Supreme Court held constitutional an analogous California statute providing long-arm jurisdiction over an out-of-state insurer. At issue was a reinsurance certificate issued by a Texas insurer, unlicensed to do business in California, to a California resident. Id. at 221-22. The Court held that California's jurisdiction over the insurer comported with due process, noting, inter alia, that the insured was a resident of California at the time the reinsurance certificate was issued, and that the insurer mailed the reinsurance certificate into California. Id. at 221-23. While the Second Circuit has cited approvingly McGee's constitutional holding as recently as 1988, see Armada Supply, 858 F.2d at 849, decisions from other circuits have criticized McGee's holding in light of subsequent developments in personal jurisdiction jurisprudence, see, e.g., Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790, 796-97 (7th Cir. 1996) (distinguishing McGee and noting that "[t]he McGee case represents perhaps the broadest application of the test set forth in International Shoe and later cases"); Rambo v. Am. S. Ins. Co., 839 F.2d 1415, 1421 & n.8 (10th Cir. 1988) (characterizing McGee as the Supreme Court's "most relaxed standard of contacts—one which it has steadfastly declined to extend," and explaining that in McGee, "the presence of the plaintiff was not the substantial connection [to the forum state], rather it was the insurance company's purposeful acts soliciting business in the forum state"). But see Weiss v. La Suisse, 69 F. Supp. 2d 449, 456 (S.D.N.Y. 1999) (denying foreign insurer's motion to dismiss for lack of personal jurisdiction, and explaining that McGee is "a case whose vitality in the context of insurance has not diminished over time"). While certain of McGee's facts—an out-of-state insurer soliciting business from an insured by delivering an insurance contract into the forum state—are not present here, another key fact is present—an insurer knowingly entering into a contract with a resident of the forum state and agreeing to insure a risk in that state.

residents would be at a severe disadvantage if they were forced to follow the insurance company to a distant State in order to hold it legally accountable.")  More significantly, New York State has a strong interest in exercising jurisdiction over companies that contract to insure activity taking place in New York State. See, e.g., Twin City Fire Ins. Co. v. Harel Ins. Co., No. 10-CV-7842 (BSJ) (GWG), 2011 WL 3480948, at *3 (S.D.N.Y. Aug. 5, 2011) ("[T]he interests of the forum state weigh heavily in favor of exercising personal jurisdiction over [defendant].  New York has an extremely strong interest in ensuring that insurers follow through on the commitments they make to New York citizens."); see also Danaher II, 2014 WL 7008938, at *6.

Finally, the court notes that "a contrary conclusion regarding due process is foreclosed by the Court's determination that jurisdiction is proper under CPLR § 302(a), which has narrower boundaries than the Due Process Clause." Danaher II, 2014 WL 7008938, at *7; see also D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 105 (2d Cir. 2006) ("[T]he constitutional requirements of personal jurisdiction are satisfied because application of N.Y. C.P.L.R. § 302(a) meets due process requirements." (citing United States v. Montreal Trust Co., 358 F.2d 239, 242 (2d Cir. 1966))).

**B.**     **Service of Process**

Even where personal jurisdiction over a defendant is proper, the defendant must be properly served with notice of the action. Cf. Flick v. Stewart-Warner Corp., 555 N.E.2d 907, 910 (N.Y. 1990) (explaining that statutory requirements for service of process "are not mere procedural technicalities but measures designed to satisfy due process requirements of actual notice").  Here, Blau has failed to make a prima facie showing of adequate service.  In any event, because the court dismisses the Complaint for failure to state a claim without prejudice to filing an amended complaint, see infra Part III.C, should Blau elect to file an amended complaint, he is

directed to serve it properly pursuant to Federal Rule of Civil Procedure 4, as if it was the initial pleading in this action.

### 1. Inadequate Service

Where an action is removed to federal court before the plaintiff accomplishes service of the initial complaint, Federal Rule of Civil Procedure 4 governs service of process. See Fed. R. Civ. P. 81(c) (providing that Federal Rules of Civil Procedure apply upon removal); see also 28 U.S.C. § 1448 ("In all cases removed from any State court to any district court of the United States in which any one or more of the defendants has not been served with process or in which the service has not been perfected prior to removal, or in which process served proves to be defective, such process or service may be completed or new process issued in the same manner as in cases originally filed in such district court."). Regarding the method of service, Rule 4, in turn, incorporates state law methods, but also provides for alternative methods available in federal court. Rule 4(h) governs serving a corporation, such as Allianz North America. It provides that a corporation may be served by following the law of the state where the district court is located or where service is made, see Fed. R. Civ. P. 4(h)(1)(A) (referencing state law rules for serving an individual contained in Rule 4(e)(1)), or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant," Fed. R. Civ. P. 4(h)(1)(B).

To date, Blau has attempted to serve Allianz North America on three occasions. Two attempts were attempted through DFS under section 1213 of the New York Insurance law. But the court has already determined that jurisdiction under section 1213 does not apply to this

action. See supra Part III.A.2.a. Accordingly, the method of service delineated in section 1213(b)(2) is not applicable here, even if Blau had complied with the statutory terms. (See also Allianz N. Am. Reply at 7-8 (arguing that Blau in fact failed to comply with section 1213(b)(2)'s terms on two separate occasions).)

Blau's attempt to serve Allianz North America through the Minnesota Secretary of State was also deficient. As discussed above, the Federal Rules of Civil Procedure incorporate state law methods of service of process, see Fed. R. Civ. P. 4(h)(1)(A), and also provide an alternative method of service for corporations—namely, serving a copy of the summons and the complaint on an officer or authorized agent, see id 4(h)(1)(B). New York law similarly provides that service upon a corporation may be done by delivering the summons to an "officer, director, managing or general agent . . . or any other agent authorized by appointment or by law to receive service." N.Y. C.P.L.R. § 311. Minnesota law, in turn, provides a framework for serving corporations in that state—a corporation may be served through its registered agent, or an officer of the corporation, see Minn. Stat. § 302A.901(1), and, "if no agent, officer, manager, or general partner can be found at the address on file with the secretary of state, the secretary of state" may be served in lieu of an agent or officer, see id. § 5.25(1). Blau argues that Allianz North America received notice of the lawsuit from the Minnesota Secretary of State (see Blau's Mem. at 14; see also Rice Decl. ¶ 6), but does not attempt to show that service of Allianz North America's agents or officers was not possible, or that an address could not be found by searching the addresses on file with the Minnesota Secretary of State (see Williams Decl. ¶¶ 4-5 & Exs. 1-2 (Dkts. 14-2, 14-3)). Based on this record, Blau has failed to make a prima facie showing that service was proper through this method. See, e.g., DeVary v. Countrywide Home Loans, Inc., 701 F. Supp. 2d 1096, 1103-04 (D. Minn. 2010) (granting motion to dismiss for insufficient

service where plaintiff failed to attempt service via registered agent before serving the Minnesota Secretary of State, and dismissing underlying claim as time-barred); Breer v. Sears, Roebuck & Co., 709 N.Y.S.2d 798, 803 (Sup. Ct. 2000) (finding service improper under similar Ohio statute where there was no showing by plaintiff that he attempted to serve a registered agent before attempting service through the Ohio Secretary of State).

Finally, Blau has failed to make a prima facie showing that he complied with Rule 4(h)(1)(B), as he fails to show that he delivered a copy of the summons and of the Complaint to an officer or agent of Allianz North America. (See also Rice Decl. ¶ 6.)

2. Consequences of Inadequate Service

Allianz North America argues that Blau's failure to serve the Complaint within 120 days of filing it in state court—or, more accurately, within 120 days of Allianz North America's notice of removal, see G.G.G. Pizza, Inc. v. Domino's Pizza, Inc., 67 F. Supp. 2d 99, 102 (E.D.N.Y. 1999) (explaining that 120-day period runs from the filing of the notice of removal, not the filing of the state court complaint)—requires the court to dismiss the action. (See Allianz N. Am. Reply at 8.) Federal rule of Civil Procedure 4(m) provides:

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). While Allianz North America characterizes the rule as requiring dismissal if service is not completed within 120 days of removal, the Second Circuit has interpreted Rule 4(m) "to give wide latitude to courts in deciding when to grant extensions on time to serve, including permitting courts to grant extensions even absent good cause." Gerena v. Korb, 617

F.3d 197, 201 (2d Cir. 2010). As discussed below, pursuant to Rule 4, the court orders that proper service of the amended complaint, if any, be made expeditiously.

### C.     Failure to State a Claim

Although the Complaint was originally filed in New York State court, upon removal, it must comply with the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 81(c). (Cf. Allianz N. Am. Reply at 9 ("Notably, not a single case cited in [Blau's] opposition addresses federal pleading standards.").) Here, the Complaint lacks sufficient factual allegations to put Allianz North America on notice of the claim against it, and to allow the court to adjudicate Blau's request for a declaratory judgment. Accordingly, the motion to dismiss for failure to state a claim is granted without prejudice.

A plaintiff must provide a "statement of circumstances, occurrences, and events in support of the claim presented," and cannot make a "bare averment that he wants relief and is entitled to it." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 n.3 (2007) (internal quotation marks and citation omitted). In addition, a plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "[M]ere 'labels and conclusions' or 'formulaic recitation[s]' of the elements of a cause of action will not do'; rather, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'" Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010) (emphasis in original) (quoting Twombly, 550 U.S at 555).

Here, in addition to being quite vague, the bulk of the allegations in the Complaint are conclusory rather than factual. (See, e.g., Compl. ¶ 22 ("Allianz did not comply with statutory notice requirements."), ¶ 30 ("Allianz is estopped from canceling the Policy."), ¶ 33 ("Under

case law and applicable statute [Allianz's] attempt to cancel the Policy is unlawful.").) The only specific factual allegations contained in the Complaint are that Blau is the trustee of the Trust (id. ¶ 1); on July 5, 2007, Allianz North America issued a life insurance policy on the life of Zupnick (a New York resident) in the amount of $8,000,000 (id. ¶¶ 2-4); said Policy was delivered in New York (id. ¶ 5); and the Trust is the owner and beneficiary of the Policy (id. ¶ 6). Blau further alleges, in conclusory fashion, that "Allianz has alleged that the Policy lapsed" (id. ¶ 7), but does not provide any additional detail concerning this contention. The remaining allegations relate to purported premium payments, notices, and miscalculations, but lack any specifics concerning dates, timing, amounts, or the contractual provisions at issue. (See, e.g., id. ¶ 10 ("Allianz miscalculated premiums due under the Policy."), ¶ 18 ("Allianz's purported notice of cancellation failed to provide the correct grace period provided by the Policy.").)

Such conclusory allegations fail to put Allianz North America on notice of the claim made against it, and prohibit the court from inferring at this stage that Blau is entitled to declaratory relief concerning the viability of the Policy. See Danaher Corp. v. Travelers Indem. Corp., No. 10-CV-121 (JPO), 2014 WL 1133472, at *6 (S.D.N.Y. Mar. 21, 2014) [Danaher I] (dismissing claim in insurance coverage dispute for failure to state a claim where plaintiff failed to allege the basis for its claim). In other words, "[w]ithout knowing the bases for [Blau's] claim[], [Allianz North America] cannot identify potential defenses or state, on the record, [its] positions on the facts." Id. (Cf. Allianz N. Am. Reply at 9-10 (explaining that due to lack of specificity in Complaint, Allianz North America cannot determine which versions of potentially applicable regulations apply).) Nor can the court "facilitate litigation," Danaher I, 2014 WL 1133472, at *6, where the Complaint lacks such fundamental allegations.

33

Citing to coverage disputes decided in New York State courts, Blau prematurely jumps to a substantive discussion of potentially governing statutes and regulations. (See Blau Mem. at 14-19.) But, as Allianz North America correctly points out, it "and this [c]ourt cannot address the merits of [Blau's] claims because there is no way of knowing what they are" based on the limited, non-conclusory facts alleged in the Complaint. (Allianz N. Am. Reply at 9.) It is not enough to describe the potentially governing law (see, e.g., Blau Mem. at 16 (describing statutory grace period and arguing that Allianz North America failed to comply with governing law)); rather, Blau must allege actual facts concerning this particular Policy, Allianz North America's servicing of the Policy, and Allianz North America's purported claim that the Policy has lapsed. Blau "cannot ignore the pleading requirements simply because the parties may be familiar with the underlying facts." Danaher I, 2014 WL 1133472, at *6. Moreover, some of the very cases cited by Blau indicate that a court tasked with determining the legal sufficiency of a complaint in this context requires additional factual allegations to render a decision. See, e.g., Blumenberg v. Avita Life & Annuity Co. of N.Y., 977 N.Y.S.2d 665 (Table), 2013 WL 5496144, at *1-4 (Sup. Ct. Oct. 1, 2013) (denying motion to dismiss and, inter alia, reciting language of allegedly deficient notice, and amount due and payment due date listed on the lapse notice in question); Zeligfeld v. Phx. Life Ins. Co., 975 N.Y.S.2d 370 (Table), 2013 WL 1688902, at *1-4 (Sup. Ct. Apr. 17, 2013) (denying motion to dismiss and describing language and timing of notices, and calculation of amounts purportedly due).

Accordingly, Allianz North America's motion to dismiss for failure to state a claim is granted without prejudice. Given the nature of the factual gaps in the Complaint, Blau may be able to cure the issues by amendment. As discussed further below, the court grants Blau leave to

file (and then properly serve) an amended complaint by September 18, 2015. See Fed. R. Civ.

P. 81(c)(2) ("After removal, repleading is unnecessary unless the court orders it.").

## IV.    CONCLUSION

For the reasons set forth above, Allianz North America's motion to dismiss the

Complaint is GRANTED WITHOUT PREJUDICE for failure to state a claim.  The court

DIRECTS Blau to take the following actions, if he chooses:

- By September 18, 2015, (1) electronically file an amended complaint addressing the deficiencies in the original Complaint, and (2) request a signed summons from the Clerk of Court by submitting with the amended complaint a proposed Summons in a Civil Action, see Fed. R. Civ. P. 4(a)(1), (b).

- Within fourteen (14) days of receiving the signed summons from the Clerk of Court, serve the signed summons and amended complaint on Allianz North America in compliance with Federal Rule of Civil Procedure 4(h)(1)(A) or (B). Alternatively, should Blau seek to request a waiver of service from Allianz North America pursuant to Federal Rule of Civil Procedure 4(d)(1), he must request the waiver from Allianz North America within fourteen (14) days of receiving the signed summons from the Clerk of Court.

- Within forty-five (45) days of receiving the signed summons from the Clerk of Court, electronically file proof of service, or electronically file a letter informing the court that Allianz North America has waived service under Rule 4(d).

SO ORDERED.

s/Nichols G. Garaufis

Dated: Brooklyn, New York                    NICHOLAS G. GARAUFIS
       August 17, 2015                        United States District Judge