D/F

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
DAVID BLAU, Trustee of the Zupnick Family Trust
2008 C,

                    Plaintiff,                            **MEMORANDUM & ORDER**

      -against-                                     14-CV-3202 (NGG) (VMS)

ALLIANZ LIFE INSURANCE COMPANY OF
NORTH AMERICA,

                    Defendant.
----------------------------------------------------------------X
NICHOLAS G. GARAUFIS, United States District Judge.

        Plaintiff David Blau, Trustee of the Zupnick Family Trust 2008 C (the "Trust"), brings this action against Defendant Allianz Life Insurance Company of North America ("Allianz North America"), seeking declaratory relief concerning a life insurance policy issued by Allianz North America of which the Trust is owner and beneficiary. Plaintiff commenced this action in New York Supreme Court, County of Kings, on April 3, 2014. (N.Y. Sup. Ct. Compl. (Dkt. 1-1) at ECF p.7.) Defendant removed the case to federal court on May 22, 2014. (Not. of Removal (Dkt. 1).) On September 2, 2014, Defendant moved to dismiss the complaint for failure to state a claim on which relief could be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). (Mot to Dismiss (Dkt. 14).) This court granted Defendant's motion on August 17, 2015, but directed Plaintiff to file an amended complaint addressing certain deficiencies in his original complaint. (Mem. & Order (Dkt. 17).) On September 18, 2015, Plaintiff filed an amended complaint seeking the instant declaratory relief. (Am. Compl. (Dkt. 18).) The parties attempted to mediate their dispute, though the court granted both parties leave to move for summary judgment if they were unable to resolve their dispute through extrajudicial means. (Nov. 11, 2016, Minute Entry.) On January 13, 2017, the parties set a joint briefing schedule while still

1

hoping to resolve their dispute by mediation. (Jan. 13, 2017, Letter (Dkt. 37).) On May 12, 2017, both parties filed their fully briefed cross-motions for summary judgment. (Pl. Mot. for Summ. J. ("Pl. Mot.") (Dkt. 40); Pl. Mem. in Supp. of Pl. Mot. ("Pl. Mem.") (Dkt. 40-2); Def. Mem. in Opp'n to Pl. Mot. ("Def. Opp'n") (Dkt. 41); Pl. Reply to Def. Opp'n ("Pl. Reply") (Dkt. 42); Def. Mot. for Summ. J. ("Def. Mot.") (Dkt. 43); Def. Mem. in Supp. of Def. Mot. ("Def. Mem.") (Dkt. 43-1); Pl. Mem. in Opp'n to Def. Mot. ("Pl. Opp'n") (Dkt. 44); Def. Reply to Pl. Opp'n ("Def. Reply") (Dkt. 46).)

For the reasons set forth below, Defendant's motion is GRANTED and Plaintiff's motion is DENIED.

I.  BACKGROUND

    A.  Facts

Plaintiff alleges that on or about April 7, 2007, Defendant issued a life insurance policy with a face value of $8,000,000 on the life of Dora Zupnick (the "Policy"). (Am. Compl. ¶ 4.) The Trust is both the owner and beneficiary of the Policy. (Id. ¶¶ 5-6.) Plaintiff is the trustee of the Trust. (Id. ¶ 1.) Plaintiff became trustee of the Trust on April 10, 2010. (Def. Mem. at 5.) Zupnick was alive as of the filing of the amended complaint, and therefore no demand on the Policy has been made. (Am. Compl. ¶ 61.)

From time to time, Defendant sent notices to the Trust informing it of premium payments that had come due. (Id. ¶¶ 10-19.) The Trust would then pay the required premium to ensure that the Policy did not lapse. (See Pl. Resp. to Def. Rule 56.1 Statement (Dkt. 44-1) ¶ 20.) The most recent such payment made by the Trust was in February 2011. (Am. Compl. ¶ 20.) On March 10, 2011, Defendant sent a letter to the Trust (the "March Grace Notice") informing it once again that the premium payment was due. (See Def. Mem. at 7; Def. Reply in Supp. of

Def. Rule 56.1 Statement ¶ 38.) The March Grace Notice said that the Trust owed $71,900.74 in premium payments and that the Policy had entered grace. (See Def. Reply in Supp. of Def. Rule 56.1 Statement (Dkt. 46-1) ¶ 38.) Over the next month (the "Grace Period"), neither Plaintiff nor the Trust made any payment in response to the March Grace Notice. (See Def. Rule 56.1 Statement (Dkt. 53-2) ¶ 37.) On April 9, 2011, Defendant sent a lapse notice informing the Trust that the Policy had lapsed. (Am. Compl. ¶ 24.) That same date, Defendant sent another letter (the "April Grace Notice") informing the Trust that it owed $34,726.67 in premium payments. (Id. ¶ 21.) No other communications were sent in reference to the April Grace Notice.

Plaintiff alleges that Defendant considers the Policy to have lapsed and seeks a contrary declaration from this court "that the Policy is in full force and effect and has been continuously in full force and effect since the Policy was issued without any lapses in coverage." (Id. ¶¶ 25-26.)

### B. Arguments

In their cross-motions for summary judgment, the parties present the following arguments:

Plaintiff moves this court to declare the Policy "in good standing." (Pl. Mem. at 16.) Plaintiff contends that the March Grace Notice should be declared invalid because it demanded a higher dollar amount than what the Trust needed to pay to avoid lapse, featured the incorrect due date for payment, and contained two addresses for where payment should be sent. (Id. at 11-16.)

Defendant seeks a judgment as a matter of law on the grounds that the Policy lapsed when Plaintiff failed to make timely payments. (Def. Mem. at 9.) Defendant bases its argument on four principal points. First, it argues that the Policy lapsed when Plaintiff failed to make payments before the expiration of the Grace Period. (Id. at 10-15.) Second, it claims that, even

3

if the March Grace Notice was invalid, the Policy lapsed after a year of nonpayment pursuant to New York law. (Id. at 15-18.) Third, Defendant construes Plaintiff's failure to pay premiums as a repudiation or abandonment of the Policy, leading to the conclusion that Plaintiff forfeited his rights in the Policy. (Id. at 19-20.) Finally, Defendant submits that Plaintiff's claims are barred by the statute of limitations and that the Policy could only be reinstated within a three-year period that already ended. (Id. at 21-22.)

## II. STANDARD OF REVIEW

A court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'material' fact is one capable of influencing the case's outcome under governing substantive law, and a 'genuine' dispute is one as to which the evidence would permit a reasonable juror to find for the party opposing the motion." Figueroa v. Mazza, 825 F.3d 89, 98 (2d Cir. 2016) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "The movant may discharge this burden by showing that the non-moving party has 'fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co., 255 F. Supp. 3d 443, 451 (S.D.N.Y. Apr. 28, 2015) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "'The mere existence of a scintilla of evidence' in support of the non-movant will be insufficient to defeat a summary judgment motion." Transflo Terminal Servs., Inc. v. Brooklyn Res. Recovery, Inc., 248 F. Supp. 3d 397, 399 (E.D.N.Y. 2017) (quoting Liberty Lobby, 477 U.S. at 252).

"In determining whether an issue is genuine, '[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the

4

light most favorable to the party opposing the motion.'" SCW West LLC v. Westport Ins. Corp., 856 F. Supp. 2d 514, 521 (S.D.N.Y. 2012) (quoting Cronin v. Aetna Life Ins. Co., 46 F.3d 196, 202 (2d Cir. 1995)). "[T]he judge's function is not [] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Redd v. N.Y. Div. of Parole, 678 F.3d 166, 173-74 (2d Cir. 2012) (quoting Liberty Lobby, 477 U.S. at 249). However, "[a] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment," and "[m]ere conclusory allegations or denials . . . cannot by themselves create a genuine issue of material fact where none would otherwise exist." Hicks v. Baines, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citation omitted).

## III. DISCUSSION

Applying New York law, as mandated by New York's choice-of-law rules, the court cannot grant summary judgment on the claim that the Policy lapsed on April 10, 2011, because there is a triable question as to the accuracy of the March Grace Notice's stated amount due. The court can, however, grant Defendant's motion for summary judgment on the claim that the Policy lapsed on April 10, 2012, following a year of post-default nonpayment. The court does not address Defendant's contentions that Plaintiff effectively abandoned the Policy or that Plaintiff's action is barred by the statute of limitations.

### A. Conflict of Laws

#### 1. Legal Standard

"Where jurisdiction is predicated on diversity of citizenship, a federal court must apply the choice-of-law rules of the forum state." Thea v. Kleinhandler, 807 F.3d 492, 497 (2d Cir. 2015) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941); Forest Park

5

Pictures v. Universal Television Network, Inc., 683 F.3d 424, 433 (2d Cir. 2012)). "The first step . . . is to determine whether there is an actual conflict between the laws of the jurisdictions involved.'" In re Allstate Ins. Co., 613 N.E.2d 936, 937 (N.Y. 1993). "[I]n the absence of any conflict between the laws of the two jurisdictions . . . , no choice-of-law analysis is required." O'Leary v. S & A Elec. Contracting Corp., 53 N.Y.S.3d 617, 619 (App. Div. 2017) (citing J. Aron & Co. v. Chown, 647 N.Y.S.2d 8 (App. Div. 1996)). If "there is no conflict, for practical reasons, that is, for ease of administrating the case, New York, as the forum state, would apply its law." Wall v. CSX Transp., Inc., 471 F.3d 410, 422-23 (citing Excess Ins. Co. v. Factory Mut. Ins. Co., 769 N.Y.S.2d 487, 489 (App. Div. 2003)).

"If an actual conflict exists, New York applies the 'center of gravity' or 'grouping of contacts' choice of law theory." Fireman's Fund Ins. Co. v. Great Am. Ins. Co. of N.Y., 822 F.3d 620, 641 (2d Cir. 2016) (alteration adopted) (internal quotation marks omitted). "[T]he New York Court of Appeals has endorsed the following factors" as relevant for the "center of gravity" approach: "the places of negotiation and performance; the location of the subject matter; and the domicile or place of business of the contracting parties." Id. at 642 (internal quotation marks and citations omitted). If, with regard to an insurance contract, "the insured risk is scattered throughout multiple states, New York courts deem the risk to be located principally in one state," and use "the state of the insured's domicile . . . as a proxy for the principal location of the insured risk." Id. (alterations adopted) (internal citations and quotation marks omitted).

2. Analysis

The parties admit that the contractual terms of the insurance policy do not contain a choice-of-law provision. Plaintiff argues that "a choice of law analysis will lead to the application of New Jersey Law." (Pl. Mem. at 2.) Defendant, meanwhile, argues that "New

York law applies." (Def. Opp'n at 3.) Even so, the parties agree that there is no difference between New York and New Jersey law for the purposes of the issues in this case. (See Pl. Mem. at 2; Def. Mem. at 10 n.3.) While such agreement might be enough to lead this court to apply forum (i.e. New York) law without further analysis, see Wall, 471 F.3d at 422-23, the court will conduct a choice-of-law analysis due to the fact that certain statutory language could be read to create a conflict (see Pl. Mem. at 2.), and the resolution of the choice-of-law question is not a close call.

The "center of gravity" approach favors the application of New York law in this case. Plaintiff, the trustee of the Trust, is a New York resident. (Am. Compl. ¶ 2.) The policy was issued to a New York Trust. (Id. ¶ 8.) The policy insured the life of a New York resident. (Id. ¶ 7.) The Policy was delivered to an insurance broker in New York for delivery to the insured. (Id. ¶ 9.) Plaintiff's argument for applying New Jersey law based on Defendant's mistaken belief that the Policy was to be applied for in New Jersey is unavailing. No state other than New York has a stronger pull on the center of gravity. See AEI Life, LLC v. Lincoln Benefit Life Co., 225 F. Supp. 3d 136, 149 (E.D.N.Y. 2016) (Weinstein, J.). The court therefore applies New York law to every issue in this case, without needing to analyze whether there are any relevant differences between New York and New Jersey law.

### B. Lapse at the Time of Nonpayment

Under New York law, notice of termination of a life insurance policy due to default in payment of the premium must be mailed to the insured at least fifteen and no more than forty-five days prior to the day when such payment becomes due. N.Y. Ins. Law § 3211(a)(1) (McKinney 2018). The notice must "state the amount of such payment, the date when due, [and] the place where and the person to whom it is payable." Id. § 3211(b)(2). "Although forfeiture of

life insurance coverage for late payment of premiums is not favored in the law, these notice requirements should not be construed as creating a trap for either the insurer or the insured." Stein v. Am. Gen. Life Ins. Co., 665 F. App'x 73, 76 (2d Cir. 2016) (citations and internal quotation marks omitted).

Plaintiff disputes that Defendant satisfied each of these Section 3211(b)(2) requirements, a contention which he uses to claim that Defendant was not able to lapse the Policy at the conclusion of the Grace Period. (See Pl. Mem. at 2-3.)

1. Return Address

Plaintiff's argument that the March Grace Notice is invalid "because it did not specify where payment must be sent and contained two different addresses" is not persuasive. (See Pl. Mem. at 16.) The March Grace Notice contained two addresses, both of which were listed as belonging to Allianz North America. (See Mar. 10, 2011, Grace Notice (Dkt. 43-4 at ECF p.49).) Defendant states that it would have accepted payment at either address. (Def. Opp'n at 15.) Additionally, Defendant points out that Plaintiff had made eighteen separate premium payments before the March Grace Notice, "so it knew where to send payment." (Id. at 16.) Given the lack of clear ambiguity in the March Grace Notice as well as Plaintiff's history of successful payments, this aspect of the March Grace Notice "could not have confused or prejudiced" Plaintiff. See Stein, 665 F. App'x at 77; cf. Zeligfeld v. Phoenix Life Ins. Co., No. 502791/12, 2013 WL 1688902, at *5 (N.Y. Sup. Ct. Apr. 17, 2013) (finding a grace notice invalid where it listed two different entities with three different addresses, something that the court said provided no clear idea of whom the recipient of payment should be).

2. Due Date of Payment

Plaintiff is incorrect that New York law mandates the nullification of a lapse notice if the notice's due date "is not stated correctly and with specificity." (Pl. Mem. at 15.) Plaintiff takes issue with the fact that the March Grace Notice stated, "If the amount due does not reach us by the due date, your policy will lapse," something which Plaintiff alleges makes it sound like the premium payment was due before its actual due date. (Id. at 14.) New York law, however, says only that a lapse notice must contain "the date when due." N.Y. Ins. Law § 3211(b)(2). Even if Plaintiff is correct that the March Grace Notice falsely implied that the Trust needed to make the premium payment before the date it came due, that does not change the fact that the March Grace Notice indisputably included the due date, which is all that the law requires. Even if the March Grace Notice had contained an incorrect due date, such error would be de minimis given that Plaintiff had ample time in which to pay the balance on the premium and never even attempted to do so (see Def. Rule 56.1 Statement ¶¶ 37, 41). See Stein, 665 F. App'x at 77.

3. Amount Due

The final objection to the March Grace Notice raised by Plaintiff regards the amount due. Specifically, Plaintiff claims that the March Grace Notice is invalid because Defendant listed the wrong amount due, allegedly overcharging the Trust by approximately $30,000. (See Pl. Mem. at 11.)

As stated above, New York law requires a lapse notice to contain "the amount of [the premium payment required to save the policy from default]." N.Y. Ins. Law § 3211(b)(2). "Although the statute does not explicitly state that the amount given in the notice must be correct, courts in states with similar provisions have read that requirement into the statute." Lebovits v. PHL Variable Ins. Co., 199 F. Supp. 3d 678, 680 (E.D.N.Y. 2016); see Blumenberg

v. Aviva Life & Annuity Co. of N.Y., No. 500568/13, 2013 WL 5496144, at *3 (N.Y. Sup. Ct. Oct. 1, 2013) ("Implicit in the notice requirements of Insurance Law § 3211(b)(1) is that the lapse notice correctly state the amount of premium necessary to be paid [to] avoid a lapse."). At least one state trial judge has found that, where "the premium amount listed as due in the notice is significantly higher than the amount actually required . . . such a notice would not be effective to cancel the policy." Zeligfeld, 2013 WL 1688902, at *4.

As another judge in this district has observed, the appellate courts of New York State have not addressed the question of whether a notice of termination with a "significantly higher" amount due than what is actually required under the policy can be effective to cancel the policy. See Lebovits, 199 F. Supp. 3d at 680. Attempting to predict whether the New York Court of Appeals would accept this proposition, Judge Block "agree[d] that the state's highest court would invalidate a notice that misstated the premium due, as long as the misstatement was not de minimis." Id. The question here is whether the March Grace Notice contained an incorrect amount and, if it did, whether such amount was sufficiently large to necessitate invalidation of the lapse of the Policy.

By the terms of the Policy, once the Policy entered default it would lapse unless Defendant received a "premium payment sufficient to keep [the P]olicy in force for three months." (Policy (Dkt. 43-4) at ECF p.30.) According to Plaintiff's expert, the required amount under this clause should have been $41,786.12, rather than the $71,900.74 that was actually demanded. (Morrow Expert Report (Dkt. 40-5) at ECF p.7.) Plaintiff's expert says that "[i]t appears that the insurance company requested 4 months of monthly deductions be paid, plus some additional buffer, as opposed to the 3 months mentioned in the grace period section of the policy." (Id. at ECF p.8.) Neither Defendant nor Defendant's expert rebuts the premium

10

payment amount offered by Plaintiff's expert, nor does either articulate how Defendant arrived at the $71,900.74 figure. (See Harper Expert Report (Dkt. 40-6) at ECF p.8; Def. Resp. to Pl. Rule 56.1 Statement (Dkt. 41-1) at 2.) Defendant is reduced to arguing that "the Policy does not require that the grace notice contain the amount of premium due to prevent the lapse of the Policy." (Def. Mem. at 4.) That point is, of course, irrelevant given how courts have interpreted the notice mandate in Section 3211(b)(2). Defendant also provides the court with a list of similarly high amounts that it had demanded in previous grace notices (see Def. Rule 56.1 Statement ¶ 21) but it fails to explain how it arrived at these amounts and what the relation of these past figures is to the figure in the March Grace Notice.

In Lebovits, Judge Block acknowledged that it was possible to read contractual language similar to that of the Policy "to mean that the insured must pay three months' worth of premiums plus the shortfall that caused the default—in effect, a fourth monthly premium (or portion thereof)." 199 F. Supp. 3d at 681. But Judge Block also recognized that "any ambiguity . . . must be construed against the insurer as the drafter of the policy" and found that the plaintiff's interpretation of the contractual term—which, similar to that of Plaintiff in the instant case, was that "the amount due is three monthly premiums, with the shortfall included in that amount"— was the more natural reading. Id. (quoting NIACC, LLC v. Greenwich Ins. Co., 857 N.Y.S.2d 723, 724 (App. Div. 2008)).

The court finds that, at the very least, there is a disputed issue of material fact regarding whether the amount due in the March Grace Notice was accurate. Accordingly, the court must reject Defendant's argument that the Policy lapsed in April 2011 due to Plaintiff's failure to cure the Policy's lapse during the Grace Period.

### C. Lapse Following a Year of Nonpayment

Defendant contends that, even if the March Grace Notice was not legally valid when it was issued, Plaintiff's nonpayment for a year following the due date of the premium served to terminate the policy. (See Def. Mem. at 15-16.) The court agrees and grants summary judgment for Defendant on this ground.

"Although noncompliance with § 3211 means that an insurer cannot lapse the policy within one year of the default, it may still lapse the policy after that period." Lebovits, 199 F. Supp. 3d at 681. The notice requirement contained within Section 3211(a)(1) only exists "to prevent forfeiture without notice within the period of one year from the occurrence of the default." Brown v. Travelers Ins. Co., 288 N.Y.S. 822, 825 (City Ct. 1935). After a year of nonpayment, the insurer may lapse the policy without any notice. See Weiss v. Sec. Mut. Life Ins. Co. of N.Y., 45 N.Y.S.3d 169, 171 (App. Div. 2017) ("Regardless of whether the premium notice mailed by the defendant to the plaintiff complied with the statutory requirements relied upon by the plaintiff, the policy lapsed by its terms, and in accordance with the statute, one year after the due date of the missed premium payment . . . ." (internal citations omitted)); Brown, 288 N.Y.S. at 825 ("[I]f no notice whatsoever had been sent by the company, the policy would undoubtedly have lapsed after default in the payment of premiums for one year."); see also 5 Steven Plitt et al., Couch on Insurance § 71:18 (3d ed. 2017) ("It, therefore, follows that the rule that notice must be given does not apply where there has been a total failure to pay several premiums.").

Plaintiff defaulted on the Policy on April 10, 2011. (See Def. Rule 56.1 Statement (Dkt. 43-2) ¶ 38; Mar. 10, 2011, Grace Notice.) Plaintiff admits that he did not attempt to make any payments on the Policy following this date; to the extent that he has attempted to "reinstate"

the Policy, it was through the filing of this action on April 3, 2014. (Pl. Resp. to Def. Rule 56.1 Statement ¶ 41.)[1] Because Plaintiff did not attempt to make any premium payments in the year following default, or at any point thereafter, Defendant is entitled to a judgment that the Policy fell out of force due to Plaintiff's extended period of nonpayment. Plaintiff's statement that he "is prepared and has always been prepared to pay any outstanding premiums on the Policy" does not square with the reality of the situation, which suggests the exact opposite to be true. (See Am. Compl. ¶ 60.)

Plaintiff does not contest this point. Instead, he makes two unrelated arguments. First, he argues that the Policy could not have lapsed after a year of nonpayment if the March Grace Notice was invalid. (See Pl. Opp'n at 5.) But, as Defendant points out, this would lead to the anomalous result in which an insurer could terminate a policy after a year of nonpayment if it sent no notice at all, but not if it sent a defective notice. (See Def. Reply at 9-10.)[2] This outcome would make no sense, and it also runs counter to the established law of New York, as discussed above. See, e.g., Lebovits, 199 F. Supp. 3d at 681 ("Although noncompliance with § 3211 means that an insurer cannot lapse the policy within one year of the default, it may still lapse the policy after that period.").

---

[1] Of general relevance is the fact that, by the Policy's terms, "[n]otice for reinstatement must be made within three years from the date of Lapse." (Policy at ECF p.31.) It seems to the court that this was the only way that Plaintiff could have saved the Policy following his year of nonpayment thereon, but it is equally clear that Plaintiff failed to make any Notice of Reinstatement within the required period of time, so this contractual point is moot.

[2] Plaintiff attempts to argue that summary judgment should not be granted for Defendant because Defendant "failed to provide proof of mailing." (Pl. Opp'n at 14.) Although this point is more relevant to the question of whether the Policy lapsed at the end of the Grace Period, it arguably also intersects with the question of whether Defendant had the right to terminate the Policy after a year of nonpayment. If Plaintiff sincerely believed that Defendant had not sent the March Grace Notice, that might aid Defendant on the question of whether it could terminate the Policy after a year of nonpayment, given Plaintiff's view of the law. But not only is this point arguably untrue (see Def. Reply at 5-7 (disputing Plaintiff's belief that Defendant failed to provide proof of mailing)), it is immaterial for the same reason that Plaintiff's first argument fails: Defendant was under no obligation to send a notice in order to terminate the Policy after a year of nonpayment.

13

Second, Plaintiff seems to argue that the Policy should not have entered default at all because its terms are "incomprehensible." (See Pl. Opp'n at 17.) As Defendant explains in its motion for summary judgment, "[t]here are three different methods that may be used to determine when a policy enters grace; the grace period begins when all three policy tests fail." (Def. Mem. at 2.) Plaintiff claims that these "terms are barely readable and most certainly not understandable for the average insured or owner" (Pl. Opp'n at 23), something which Plaintiff believes should compel this court to declare the Policy in violation of New York law. See N.Y. Ins. Law § 3102(c) (mandating a minimum level of readability for insurance policies). Plaintiff's last-ditch effort to overcome his failure to pay the necessary premiums on the Policy will not work. In response to Defendant's Rule 56.1 Statement concerning the Policy's requirements for remaining in force, Plaintiff simply says that "those terms, which are not comprehensible, differ substantially from their description[s]." (Pl. Resp. to Def. Rule 56.1 Statement ¶¶ 7-10.) Defendant has plainly rebutted Plaintiff's claims on this point. For one, the fact that a state insurance regulator has approved the Policy as sufficiently readable is strong evidence of statutory compliance. (See Def. Reply at 3.) Second, Plaintiff's flippant remarks about the Policy formulas aside, the court finds the language of these tests to be sufficiently readable and unambiguous. It is clear that "a failure to pay premium will eventually result in a policy's lapse, due to the failure to satisfy all of the three policy tests." (See id. at 4.) Finally, the court agrees that "ambiguous clauses should not be permitted to serve as traps for policyholders . . . [but] provisions of insurance policies which are clearly and definitely set forth in appropriate language, and upon which the calculations of the company are based, should be maintained unimpaired by loose and ill-considered interpretations." Mayers v. Mass. Mut. Life Ins. Co., 11 F. Supp. 80, 85 (E.D.N.Y. 1935).

## IV. CONCLUSION

The court GRANTS Defendant's motion for summary judgment (Dkt. 43) and DENIES Plaintiff's motion for summary judgment (Dkt. 40). The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

Dated: Brooklyn, New York
February 15, 2018

s/Nicholas G. Garaufis
NICHOLAS G. GARAUFIS
United States District Judge